[No. 50105–0.   En Banc.   December 6, 1984.]

WALTHEW, WARNER, KEEFE, ARRON, COSTELLO AND THOMPSON, *Respondent,* v. THE DEPARTMENT OF REVENUE, *Appellant.*

*Kenneth O. Eikenberry, Attorney General,* and *Jeffrey D. Goltz, Assistant,* for appellant.

*Eugene Arron* (of *Walthew, Warner, Keefe, Arron, Costello & Thompson*), for respondent.

*Michael B. Crutcher, Michael A. Small,* and *Marc R. Kittner* on behalf of Washington Shorthand Reporters Association, amici curiae for appellant.

*Roger L. Stouder, Alan W. Schulkin, C. James Judson,* and *Susan G. Duffy* on behalf of Washington State Bar Association, amici curiae for respondent.

PEARSON, J.—This case was heard on direct appeal under RAP 4.2. The Department of Revenue appeals the trial court's decision that the Walthew firm (taxpayer) is not required to pay the state business and occupation tax on client reimbursements for payments made by the taxpayer to court reporters, physicians, and process servers. The issue before the court is one of statutory interpretation. Does the definition of gross income under RCW 82.04.080 include client reimbursements to lawyers on advances made to third party providers, when the lawyer is acting as agent

for the client, and the client remains ultimately liable for the payment? We conclude that it does not and affirm the trial court.

The taxpayer law firm specializes in workers' compensation and personal injury cases. Most of its clients are taken on a contingency basis. It is the firm's practice to sign contracts with its clients confirming the client's obligation to pay all court costs, medical or other expenses involved in litigation. The firm customarily paid these expenses, then sought reimbursement from the clients. All loans and advances were carried on the taxpayer's books as assets, representing receivables. When paid, they were listed as reimbursements. If loans or advances were not repaid, they were written off as bad debts. Some clients deposited funds to cover anticipated costs. Such deposits were carried on the taxpayer's books as reimbursements. The taxpayer did not assess any additional cost to clients as part of the repayment to third party providers.

The trial court based its opinion on the Washington Code of Professional Responsibility and this court's decision in *Christensen, O'Connor, Garrison & Havelka v. Department of Rev.*, 97 Wn.2d 764, 649 P.2d 839 (1982).

The pertinent section of the Washington Code of Professional Responsibility provides as follows:

> While representing a client in connection with contemplated or pending litigation, a lawyer shall not advance or guarantee financial assistance to his client, except that a lawyer may advance or guarantee the expenses of litigation, including court costs, expenses of investigation, expenses of medical examination, and costs of obtaining and presenting evidence, provided the client remains ultimately liable for such expenses.

CPR DR 5–103(B).

The facts in *Christensen* are similar to those in this case. The patent law firm in *Christensen* arranged for the services of draftsmen and out–of–state patent attorneys to provide services to its clients. The law firm was billed for the services and then requested reimbursement from the

client. The law firm acknowledged "a professional and ethical duty" to pay the third party providers. *Christensen,* at 766. The court held that reimbursements to the law firm for advances made to third party providers were exempt from gross income under WAC 458–20–111 (Rule 111).

The court outlined the Rule 111 basis for this exemption:

I. Repayments are customary reimbursements for advances made to procure a service for the client.

. . .

II. Repayments involve services that the taxpayer did not or could not render.

. . .

III. Taxpayer is not liable for the initial payments.

. . . An attorney is not liable for charges incurred by the attorney on behalf of his client unless the attorney assumes such liability.

*Christensen,* at 769–70.

■■ In *Christensen,* we were called upon to interpret WAC 458–20–111, but we did not consider the statutory basis for that rule. We are now called upon to interpret Rule 111 in conjunction with the underlying statute authorizing a business and occupation tax on services. Although the administrative agency charged with enforcing a statute is entitled to deference, it is the province of the courts to determine the proper interpretation of the statute, *Nucleonics Alliance Local 1–369 v. WPPSS,* 101 Wn.2d 24, 29, 677 P.2d 108 (1984); *Hearst Corp. v. Hoppe,* 90 Wn.2d 123, 130, 580 P.2d 246 (1978). We conclude that pass–through payments of the type represented here and in *Christensen* are not the type of reimbursements the Legislature contemplated for inclusion in gross income for services. RCW 82.04.080 defines "gross income of the business" as

the value proceeding or accruing by reason of the transaction of the business engaged in and includes gross proceeds of sales, *compensation for the rendition of services,* . . . all without any deduction on account of the cost of tangible property sold, the cost of materials used, labor costs, interest, discount, delivery costs, taxes, or

any other expense whatsoever paid or accrued and without any deduction on account of losses. (Italics ours.) RCW 82.04.090 defines "value proceeding or accruing" as "*consideration* . . . actually received or accrued." (Italics ours.) Compensation or consideration for the service is thus the basis for the tax.

The Department argues that the nature of the tax on gross income is pyramidal with all costs accumulating. Each cost component in the process of manufacturing goods or producing services contributes to the ultimately taxed gross income on goods or services sold. Thus it argues that services of third party providers are an essential part of the taxpayer's business and contribute to the ultimate value of those services. Business is defined as including "all activities engaged in with the object of gain, benefit, or advantage to the taxpayer . . ." RCW 82.04.140. Because the taxpayer law firm benefits from services of these third party providers, and because they are necessary to its business, not merely incidental costs, the Department considers them a cost of doing business. Under its reasoning, any reimbursements for these costs should be included in gross income. The Department contends that the exception in Rule 111 reflects the statutory intent to include all income except for incidental costs which are not necessary for the taxpayer's business. According to the Department, this is the meaning behind Rule 111's exclusion on the basis of agency or nonliability:

> The words "advance" and "reimbursement" apply only when the customer or client alone is liable for the payment of the fees or costs and when the taxpayer making the payment has no personal liability therefor, either primarily or secondarily, *other than as agent* for the customer or client.

(Italics ours.) WAC 458–20–111. It, therefore, concludes that any client reimbursement to the taxpayer is properly included in gross income.

We disagree with the Department's analysis. Nothing in

the statute refers to exceptions on the basis of agency and liability. The language in Rule 111 is consistent with the statute if it is read to reflect the statute's obvious intent to tax only gross income which is "compensation for the rendition of services" (RCW 82.04.080) or "consideration . . . actually received or accrued" (RCW 82.04.090). Rule 111 excludes those reimbursements for advances which are merely pass–throughs, where the taxpayer liability, if any, to the third party provider is solely agent liability:

> The words "advance" and "reimbursement" apply only when the customer or client alone is liable for the payment of the fees or costs and when the taxpayer making the payment has no personal liability therefor, either primarily or secondarily, *other than as agent* for the customer or client.

(Italics ours.) WAC 458–20–111.

By excluding agent liability, the rule recognizes pass–through payments of the kind involved here. Reimbursements to attorneys for costs of litigation cannot by rules of this court constitute compensation. Lawyers are bound by the Disciplinary Rules of the Code of Professional Responsibility. DR 5–103 prohibits a lawyer from financing the costs of litigation unless a client remains ultimately liable for those costs. Thus an attorney must because of this rule act solely as agent for the client when financing litigation. Attorneys are unique in this respect. The Department's concern that other professionals will necessarily gain an exemption by our holding is misplaced.

Although perhaps not artfully written, the thrust of Rule 111 is to recognize precisely the type of pass–through payments made by attorneys in advancing litigation costs for clients. In fact, this particular exception for attorney financing of the costs of litigation is used as an illustration within Rule 111. Such reimbursements for advances are excluded from gross income.

> [W]here an attorney pays filing fees or court costs in any litigation, such fees and costs are paid as agent for the

client and should be excluded from the gross income of the attorney.

WAC 458–20–111. While the illustration speaks in the terms of "filing fees" or "court costs" in litigation, the attorney is similarly acting solely as agent for the client in advancing the type of litigation expense involved here. There is no reason to distinguish between court costs and other expenses of litigation which the attorney is prohibited from assuming by the Code of Professional Responsibility, other than as agent for the client.

The Department also expressed concern that the ruling we make today could allow a lawyer to allocate overhead expenses to a particular case in litigation and claim that reimbursements for those costs are likewise excluded from gross income. We disagree. A lawyer's general overhead costs, even though reimbursable, are not pass–through costs because the lawyer assumes either primary or secondary liability to those types of providers. Any client liability (if assumed) to general overhead providers is secondary liability. CPR DR 5–103 does not apply to overhead even if allocated separately. It applies only to those costs which directly finance the lawsuit.

Rule 111 makes this distinction by providing that such overhead costs are not exempt as advances or reimbursements even if allocated separately.

> [N]o charge which represents . . . a cost of doing or obtaining business, even though such charge is made as a separate item, will be construed as an advance or reimbursement. Money so received constitutes a part of gross sales or gross income of the business, as the case may be. For example, no exclusion is allowed with respect to amounts received by . . . (5) any person engaging in a service business . . . for charges made separately for transportation or traveling expense.

WAC 458–20–111. It is obvious that in overhead costs the attorney incurs primary liability and not liability solely as agent for the client. Again, the Department's concern is not well taken.

The Department and amici on behalf of the Washington Shorthand Reporters Association misunderstood language in *Christensen* as inviting a challenge on the basis of a lawyer's potential liability to third party providers under agency and contractual principles. In *Christensen,* both parties had stipulated that third party providers understood they were working for named clients and the statutory basis for Rule 111 was not considered. Our holding today determines only the issue of tax liability, based on construction of the statute and administrative rule. We do not address the separate contractual or financial liability which may exist between attorneys and third party providers. That issue is not before us.

We affirm the trial court. Advancements made by a law firm to finance litigation involving court reporters, physicians, process servers and expert witnesses must remain the obligation of the client and at most the attorney assumes liability "only as agent" for the client. Reimbursements for such advances are, therefore, not taxable as compensation under the state's business and occupation tax.

WILLIAMS, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DIMMICK, and ANDERSEN, JJ., concur.

DORE, J. (concurring)—I agree with the result reached by the majority. In *Christensen, O'Connor, Garrison & Havelka v. Department of Rev.,* 97 Wn.2d 764, 649 P.2d 839 (1982), we interpreted WAC 458–20–111 (Rule 111) as excluding from a taxpayer's gross income payments from the taxpayer's client made to the taxpayer if

(1) it is a customary reimbursement for an advance made to procure a service for the client, (2) the taxpayer does not or cannot render the service, and (3) the taxpayer was not liable for the payment.

*Christensen,* at 768. Here, the first two criteria were clearly met by the taxpayer. Reimbursement to an attorney for the costs of court reporters, medical examinations and witnesses, messengers, and process servers is a regular practice

in the legal profession. In addition, these services cannot be rendered by a law firm. It is not as clear under the record presented in this case whether the taxpayer was liable to the third party service providers. There was some evidence presented upon which a rational trier of fact could have found that the taxpayer was liable to such parties. If that conclusion had been reached, then the reimbursements to the taxpayer would not be exempt from the business and occupation tax. In the subject case, however, the trial court found that the taxpayer was not liable for the services provided to its clients. This court will not overturn a finding of fact that is supported by substantial evidence. *Beggs v. Pasco*, 93 Wn.2d 682, 611 P.2d 1252 (1980); *Holland v. Boeing Co.*, 90 Wn.2d 384, 583 P.2d 621 (1978). Since there is sufficient evidence to support the trial court's findings, they become verities.

In order to avoid future factual disputes as to whether a taxpayer is liable to a third party service provider, it would be prudent for the Department of Revenue to require, or the taxpayer on his own initiative to provide, proof of non-liability. By the simple act of notifying the third party service provider that he will not be liable for his client's expenses, the attorney can ensure that reimbursements he receives from his client will not be subject to the B & O tax. Such a requirement is not novel as many jurisdictions presently require an attorney to notify a third party service provider that the attorney will not be liable for the client's expenses if he wishes to escape liability. *Monick v. Melnicoff*, 144 A.2d 381 (D.C. 1958); *Burt v. Gahan*, 351 Mass. 340, 220 N.E.2d 817 (1966); *Molezzo Reporters v. Patt*, 94 Nev. 540, 579 P.2d 1243 (1978); *Gaines Reporting Serv. v. Mack*, 4 Ohio App. 3d 234, 447 N.E.2d 1317 (1982); *C.C. Plumb Mixes, Inc. v. Stone*, 108 R.I. 75, 272 A.2d 152 (1971).

Explicit notification to the third party service provider will not impose an undue burden on attorneys. Moreover, notification will ensure that the taxpayer, the Department of Revenue, and third party service providers will not have

to litigate whether the taxpayer, in any particular circumstance, is liable to the third party service provider for services provided to the taxpayer's client.