[No. 15617-9-I.   Division One.   September 3, 1985.]

PAT CRANE, ET AL, *Appellants,* v. STANWOOD SCHOOL DISTRICT, *Respondent.*

*Julin, Fosso, Sage, McBride & Mason* and *James D. McBride II*, for appellants.

*Perkins, Coie, Stone, Olsen & Williams* and *Valerie L. Hughes*, for respondent.

RINGOLD, J.—Sarah Crane and her parents appeal the Superior Court's judgment upholding the decision of the Superintendent of Public Instruction denying Sarah a release from the Stanwood School District (Stanwood). Stanwood cross–appeals the Superior Court's stay of its judgment pending resolution of Sarah's appeal.

We summarize the findings of fact, proposed by an administrative law judge (ALJ) and accepted by the superintendent. Sarah began attending public school in the

1982–83 school year when she enrolled in kindergarten. Sarah lives in Stanwood, but she was granted a release to attend neighboring Conway School District (Conway) that school year. Sarah's parents believed that such releases would be automatically forthcoming upon request, because in the past people living in their neighborhood were routinely granted releases. They had been told, however, that each year a new request must be made and evaluated.

The parents requested a release for Sarah in the 1983–84 school year, but Stanwood's new superintendent did not automatically grant it. Instead Sarah received a release for one–half of the school year upon assurances by her parents that they planned to move from Stanwood. When the parents' move proved unfeasible, they requested a further release for the remainder of the 1983–84 school year, which was denied. That denial led to this appeal. Since that time Sarah has been attending school in Conway pending a final determination by this court. This fall Sarah will be in the third grade.

Stanwood policy for the release of students provides:

Under any of the following conditions, students who reside within the boundaries of the district shall be released to attend school in another district:

1. There exists a special hardship or detrimental condition of a financial, educational, safety or health nature affecting the student or the student's immediate family, provided that the hardship or condition is likely to be significantly alleviated as a result of the transfer.

2. Students who move into the district in mid–year may finish the school year in their former district.

3. Students in grades eleven and twelve who move into the district may complete their high school program in the former district.

In such cases the parents shall provide transportation, except that the students may ride on an established district bus route if the superintendent finds that it will facilitate their travel with no additional cost to the district.

The Cranes live near the border between Stanwood and

Conway. Buses from both school districts stop at the same place, within 500 yards of Sarah's house. Sarah would have to spend an hour and a half longer on the bus each day if she attended school in Stanwood than if she went to school in Conway. Because her father works a swing shift this would prevent him from picking up Sarah from the bus stop.

Sarah's mother does not drive. She feels it is not safe for either her or her daughter to wait at the bus stop by themselves, because it is located on an isolated country road. The family physician believes this fear and anxiety, experienced by the mother over the possibility that Sarah may change schools, could adversely affect the mother's health.

If Sarah goes to school in Stanwood it will be difficult for her father to spend much time with her or to assist her with her homework. Sarah's teacher remarked that Sarah's father had a positive effect on Sarah's mathematical ability and that his continued help was important.

Sarah's uncle lives in Conway and her cousins attend school there. The family uses the school bus system to transport Sarah to her uncle's for babysitting after school. In addition, Sarah's uncle drives Sarah's mother to school functions. These benefits will be lost if Sarah attends school in Stanwood.

Stanwood's decision to deny Sarah a release was first reviewed de novo by the ALJ, whose proposed order granted Sarah a release. The ALJ reasoned that Stanwood, in granting other releases, adopted the test of whether hardships existed and if they were easily resolved by allowing a release. Under that criteria the ALJ concluded a release was appropriate.[1]

The superintendent did not adopt the ALJ's proposed order. Instead, he denied Sarah a release because he con-

---

[1]The same year that Sarah's request was denied, two students were allowed releases from Stanwood because a Conway bus came by their home. If they had gone to school in Stanwood they would have had to walk approximately the same distance as Sarah had to walk to get to a bus stop.

cluded the Crane family's hardships were not special. The Superior Court's judgment affirmed the superintendent. In a letter explaining the court's decision to the parties, the Superior Court Judge wrote:

> I cannot find either the administrative law judge's conclusion or the superintendent's conclusion, clearly erroneous. In other words, I am not left with a definite and firm conviction that either conclusion is incorrect. By force of logic, therefore, I could not find that either conclusion would be an error of law or arbitrary and capricious.
>
> . . .
>
> [I]f the matter were before me, *de novo,* I would have held for the appellants. Nevertheless, I cannot find that the superintendent's order is *clearly* erroneous and therefore must hold for respondent.

In its written conclusions of law, the Superior Court held that a special hardship or circumstances must be shown before a release may be granted and that those conditions did not exist in this case.

### SUPERINTENDENT'S AUTHORITY

The Cranes contend that the superintendent had no authority to overrule the ALJ. Stanwood responds that the applicable statutes and regulations grant the superintendent the power to overrule an ALJ. This position is also taken by the Attorney General in an amicus curiae brief.

Agency regulations interpreting a statute which the agency has a duty to administer must be given great weight. *Gross v. Lynnwood,* 90 Wn.2d 395, 583 P.2d 1197 (1978). WAC 392–137–060 provides that if the superintendent's designee conducts the hearing, the provisions of RCW 34.04.110 shall be applicable to review by the superintendent.[2] The regulation also provides that "The superintend-

---

[2]RCW 34.04.110 provides: "Whenever in a contested case a majority of the officials of the agency who are to render the final decision have not heard or read the evidence, the decision, if adverse to a party to the proceeding other than the agency itself, shall not be made until a proposal for decision, including findings of fact and conclusions of law has been served upon the parties, and an opportunity has been afforded each party adversely affected to file exceptions and present

ent of public instruction may reject, modify, or accept any portion or all of the proposed findings of fact, proposed conclusions of law, and proposed order following his or her review of the entire record." WAC 392–137–060. It is apparent from these regulations that the agency believes that the superintendent has the authority to overrule the ALJ. It is for the courts, however, to determine the purpose and meaning of statutes even when the court's interpretation is contrary to that of the agency charged with carrying out the law. *Adams v. Department of Social & Health Servs.*, 38 Wn. App. 13, 683 P.2d 1133 (1984).

■ The administrative interpretation should be upheld here. RCW 34.12, which governs the use of ALJ's, supports the agency's interpretation. RCW 34.12.040 contemplates that if an agency conducts a hearing not presided over by officials who render the final determination, then the hearing is to be conducted by an ALJ. RCW 34.12.060 further provides that when a final decision is to be rendered by someone other than the ALJ, that judge must issue an *initial* or *proposed decision,* including findings of fact and conclusions of law.

While RCW 28A.58.242 mandates the superintendent or his or her designee hear an appeal, only the superintendent is empowered to order a release of the student. When all of these statutes are read in conjunction, the apparent intent of the Legislature is to allow the superintendent the authority to adopt, reject, or modify the ALJ's proposed order.[3]

### FOURTEENTH AMENDMENT

Sarah contends that Stanwood denied her due process,

---

written argument to a majority of the officials who are to render the decision, who shall personally consider the whole record or such portions thereof as may be cited by the parties. Oral arguments may be heard in the discretion of the agency."

[3]By Laws of 1985, ch. 225, the Legislature has now authorized the superintendent to delegate the authority to render a final decision to an administrative law judge.

violating the Fourteenth Amendment, by applying an inappropriate standard in evaluating her request for release. She asserts that under RCW 28A.58.240 the correct standard is whether the release would be the best accommodation to her.

Stanwood responds that only the superintendent's decision and not the procedures before the school board is before this court on appeal. Stanwood argues that the superintendent applied the appropriate standard under RCW 28A.58.240.

RCW 28A.58.240, relied upon by Sarah, provides in part:

> Any board of directors may make agreements with . . . the directors of other districts for the attendance of children in the school district of either as may be best accommodated therein . . .

RCW 28A.58.242, relied upon by Stanwood, provides in part:

> The decision of a school district within which a student under the age of twenty–one years resides . . . to deny such student's request for release to a nonresident school district by an agreement pursuant to RCW 28A.58.240 may be appealed to the superintendent of public instruction or his or her designee: *Provided,* That the school district of proposed transfer is willing to accept the student.
>
> The superintendent of public instruction or his or her designee shall hear the appeal and examine the evidence. The superintendent of public instruction may order the resident district to release such a student who is under the age of twenty–one years in the event he or she or his or her designee *finds that a special hardship or detrimental condition of a financial, educational, safety or health nature affecting the student or the student's immediate family or custodian may likely be significantly alleviated as a result of the transfer.* The decision of the superintendent of public instruction may be appealed to superior court pursuant to chapter 34.04 RCW, the administrative procedure act, as now or hereafter amended.

(Italics ours.)

Neither of these statutes has been interpreted in a

Washington appellate case. To implement these statutes, the superintendent promulgated WAC 392-137. Under WAC 392-137-040 each school district is mandated to formulate policies governing student requests for a release. The regulation also provides that preference may be granted to a student whose special hardship or circumstance will be alleviated by granting a release. WAC 392-137-040. This regulation must be given considerable deference because it is adopted by the agency with the duty to administer the statutes in question. *Gross v. Lynnwood*, 90 Wn.2d 395, 399, 583 P.2d 1197 (1978).

■ Stanwood formulated policies pursuant to WAC 392-137-040 and adopted the guidelines of RCW 28A.58-.242. There is no violation of due process for failing to adopt a different standard. Both the applicable regulations and the plain language of RCW 28A.58.242 indicate that the standard to be applied to a request for a release is whether the release would alleviate a special hardship of the student or the student's family.[4]

### REQUEST FOR RELEASE

The Cranes contend that the superintendent made an error of law by concluding that their hardships were not special, or that the superintendent's decision is clearly erroneous.

■ The facts are not in dispute. It is unchallenged that if Sarah were released from Stanwood it is likely the problems experienced by Sarah and her parents would be significantly alleviated. The remaining question is whether the problems that Sarah and her parents envisage constitute a special hardship or detrimental condition under RCW 28A.58.242 and the applicable regulations. What "special hardship" or "detrimental condition of a financial, educa-

---

[4]Sarah also contends her due process rights were violated because the school board conducted a secret meeting on her case. The requirements of due process were satisfied because the ALJ considered and appraised the evidence in a de novo proceeding. *See State ex rel. Pioli v. Higher Educ. Personnel Bd.*, 16 Wn. App. 642, 647, 558 P.2d 1364 (1976).

tional, safety or health nature" means under RCW 28A.58-.242 is a question of law. *See Walthew, Warner, Keefe, Arron, Costello & Thompson v. Department of Rev.,* 103 Wn.2d 183, 691 P.2d 559 (1984).

Review on appeal from an administrative agency decision is governed by RCW 34.04.130(6) which provides:

> The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
> (a) in violation of constitutional provisions; or
> (b) in excess of the statutory authority or jurisdiction of the agency; or
> (c) made upon unlawful procedure; or
> (d) affected by other error of law; or
> (e) clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order; or
> (f) arbitrary or capricious.

In the present case, RCW 34.04.130(6)(d) is applicable. The Supreme Court stated in *Renton Educ. Ass'n v. Public Empl. Relations Comm'n,* 101 Wn.2d 435, 440–41, 680 P.2d 40 (1984) that:

> When reviewing questions of law under the error of law standard of RCW 34.04.130(6)(d), an appellate court may substitute its determination for that of the agency, although the agency's determination is entitled to substantial weight. In an appeal of an administrative decision involving a mixed question of law and fact, the court does not try the facts de novo but it determines the law independently of the agency's decision and applies it to facts as found by the agency.

(Citations omitted.) The ALJ concluded, and the superintendent concurred, that none of the individual components of the family's hardships are beyond the range of normal hardships usually encountered and often overcome by parents of school–age children. The ALJ reasoned however that, when combined, the hardships were special and that Sarah should be granted a release. The superintendent did

not accept this reasoning and denied the release.

We agree with the ALJ and the superintendent that none of these problems individually would constitute a special hardship or detrimental circumstance. Taken in the aggregate, however, we believe the record establishes that a "special hardship or detrimental condition . . . affecting the student or the student's immediate family . . . may likely be significantly alleviated as a result of the transfer." RCW 28A.58.242. The superintendent erred in denying the Cranes' request for release from Stanwood.

## STAY PENDING APPEAL

Stanwood contends that RCW 34.04.130(3) does not grant the superior court the authority to stay its judgment pending appeal. It asserts that the civil rules which govern a stay of judgment from superior court were not followed.

It would be inappropriate to decide whether the trial court erred by granting the stay. Sarah has already completed the last school term and this court has decided a release is appropriate for her next school term. Thus, any decision by this court concerning the appropriateness of the stay would be advisory only, as the question has become moot. *See Brehm v. Retail Food & Drug Clerks Union No. 1105,* 4 Wn.2d 98, 102 P.2d 685 (1940).

We reverse the judgment of the Superior Court and the superintendent's order, and direct Stanwood to release Sarah to Conway for the ensuing school year.[5]

SWANSON and GROSSE, JJ., concur.

---

[5]We have considered *Ramsdell v. North River Sch. Dist. 200,* 104 Wn.2d 264, 704 P.2d 606 (1985), which was issued while this opinion was pending. *Ramsdell* is inapposite to the case sub judice.