24 P.3d 460 (2001)
106 Wash.App. 448
SEATTLE FILMWORKS, INC., Appellant,
v.
STATE OF WASHINGTON DEPARTMENT OF REVENUE, Respondent.
No. 25515-4-II.
Court of Appeals of Washington, Division 2.
June 1, 2001.
*461 James R. Johnston, Katrina Robertson Kelly, Perkins Coie, Seattle, for Appellant.
Debra Ellen Casparian, Asst Atty General, Olympia, for Respondent.
SEINFELD, J.
This case requires us to determine whether order forms that Seattle FilmWorks mailed to its customers but that the customers did not return are subject to the state use tax. FilmWorks contends that the forms fit within the exemption in WAC 458-20-116 as "advertising materials primarily related to the article with which" they were enclosed. Finding that FilmWorks "used" the order *462 forms and that they are not exempt advertising materials, we affirm.

FACTS
Seattle FilmWorks, Inc. (FilmWorks), a company that processes film and performs other photographic services, conducts a significant portion of its business by mail. Its mail-based business relies on a mailing loop in which FilmWorks receives orders from customers by mail, processes the orders, and returns the orders to the customers in a packet containing the processed film, negatives, new film, advertising materials, pre-addressed return mailers, and two order forms.[1]
FilmWorks purchases the order forms in bulk and prints customer information on the forms before placing them in the packets. The order forms list the prices for FilmWorks' services and products and each form contains two identification labels for the customer to place on the film canisters they return for processing.
Filmworks' customers return approximately 30 percent of the order forms and 97 to 98 percent of the orders FilmWorks receives are accompanied by these forms. FilmWorks asserts that it uses the order forms as its "primary vehicle" to inform its customers about products, services, prices, and to provide additional information about the services. The top portions of the order forms serve as the mailing labels for the completed packets.
When customers return their orders to FilmWorks, a data processor enters the information from the order forms into the computer system. The data processor then prints two bar code labels and attaches them to the film cassettes and order forms. The film is then processed.
FilmWorks then performs quality control checks, sending the forms to an editor who verifies the information previously entered on the computer. FilmWorks can also use the order forms with the attached bar code number to provide processing information if the computer system fails.
The Department of Revenue (DOR) conducted an audit covering the period from January 1, 1990, to March 31, 1994. Concluding that the order forms were not "advertising materials" because FilmWorks "uses" them, DOR assessed a use tax. FilmWorks paid the tax due and sought a refund under RCW 82.32.180 by appealing to the Thurston County Superior Court.
FilmWorks asserted that the forms customers did not return, approximately 70 percent of the mailed forms, were advertising materials and exempt from taxation under WAC 458-20-116(3)(d) (Rule 116). DOR contended that FilmWorks used the forms to facilitate film processing and that they were not advertising materials. Thus, according to DOR, use tax was due on the full purchase price of the order forms, not just on the 30 percent of the forms returned by customers.
After a trial on stipulated facts, the trial court found that "FilmWorks uses the `order forms' at issue when it purchases, receives, and exercises dominion and control over the forms with the intention that the forms be subsequently used by ... FilmWorks," constituting an act preparatory to FilmWorks' subsequent actual use. Clerk's Papers (CP) at 116A. The court found this qualified as "use" under RCW 82.12.010(2) and subjected the forms to the use tax.
The trial court further concluded that, even if FilmWorks did not "use" the forms, "[t]he forms at issue [were] primarily `order forms' and not advertising" and, thus, not eligible for exemption under Rule 116. CP at 116A. The court determined that the forms, when viewed as a whole, had merely "incidental" advertising value and, thus, did not fit the commonsense application of the phrase advertising material as used in Rule 116. The trial court found that the forms had a "dual use," one of which was "taxable theoretically" and one of which was "not taxable based upon the advertising exemption." CP at 127. Because of this ambiguity, *463 the trial court strictly construed the regulation to find the forms taxable.

DISCUSSION

I. STANDARD OF REVIEW
FilmWorks brought this claim for refund under RCW 82.32.180, which provides for a de novo review of the taxpayer's claims by the trial court; the taxpayer has the burden of proving that the tax paid was incorrect and establishing the correct amount of the tax. After review by the trial court, "[e]ither party may seek appellate review in the same manner as other civil actions are appealed to the appellate courts." RCW 82.32.180.
The parties agree that there are no material facts in dispute and that this matter concerns the interpretation of statutes and regulations. Construction of a statute or a regulation is a question of law that this court reviews de novo. Waste Management of Seattle, Inc. v. Util. & Transp. Comm'n, 123 Wash.2d 621, 627, 869 P.2d 1034 (1994).
When interpreting a statute, a court is to ascertain and carry out the Legislature's intent. An unambiguous statute is not subject to judicial construction and the court must derive its meaning from its plain language. Group Health Coop. of Puget Sound, Inc. v. Dep't of Revenue, 106 Wash.2d 391, 401, 722 P.2d 787 (1986). The court may not add language even if it believes the Legislature intended something else but failed to adequately express it. State v. Chester, 133 Wash.2d 15, 21, 940 P.2d 1374 (1997).
A statute or regulation is ambiguous if it is susceptible to more than one reasonable interpretation. State v. Van Woerden, 93 Wash.App. 110, 116, 967 P.2d 14 (1998). Generally, the court must construe an ambiguous taxing statute or regulation in the taxpayer's favor, but when the court is interpreting a regulation or statute granting a tax exemption or deduction, the court must construe it "strictly, though fairly and in keeping with the ordinary meaning of their language, against the taxpayer." Group Health, 106 Wash.2d at 401-02, 722 P.2d 787.

II. WAC 458-20-116(3)(d) (RULE 116)
Both parties agree that if the Rule 116 exemption applies, the order forms are not subject to the use tax.[2] Rule 116 defines the sale of certain advertising materials as "sales for resale" and not subject to tax:
Sales of ... advertising material to persons for use in the following manner are sales for resale (wholesales sales) and not subject to retail sales tax:
....
(d) Sales of advertising material to persons who enclose the advertising material with articles sold by them, when such advertising material relates primarily to the articles with which it is enclosed. Persons who enclose advertising material with articles being sold for the purpose of promoting sales of other products are consumers and may not purchase this advertising material for resale. (See RCW 82.12.010(5).)
WAC 458-20-116(3)(d).[3]
By defining certain sales as "sales for resale," thus as wholesale sales, Rule 116 protects such sales from use tax because, to be subject to use tax, the taxpayer must have purchased the materials at retail: "There is hereby levied and there shall be collected from every person in this state a tax or excise for the privilege of using within this state as a consumer: (a) Any article of tangible personal property purchased at retail [.]" RCW 82.12.020(1) (emphasis added). See also WAC 458-20-178(1) (use tax applies to the use as a consumer of articles of tangible personal property purchased at retail where the user has not paid retail sales tax on such property).

*464 III. ADVERTISING MATERIALS
FilmWorks asserts that the order forms are exempt "advertising material" for purposes of Rule 116. Because there is no definition in the regulations, in the statutes, or in case law for "advertising material" in this context, we give the phrase its ordinary or common law meaning. City of Bellevue v. Int'l Ass'n of Fire Fighters, Local 1604, 119 Wash.2d 373, 380, 831 P.2d 738 (1992). We may look to dictionary definitions for guidance. Condon Bros., Inc. v. Simpson Timber Co., 92 Wash.App. 275, 281, 966 P.2d 355 (1998).
Black's Law Dictionary provides the following definition of "advertise":
To advise, announce, apprise, command, give notice of, inform, make known, publish. To call a matter to the public attention by any means whatsoever. Any oral, written, or graphic statement made by the seller in any manner in connection with the solicitation of business and includes, without limitation because of enumeration, statements and representations made in a newspaper or other publication or on radio or television or contained in any notice, handbill, sign, catalog, or letter, or printed on or contained in any tag or label attached to or accompanying any merchandise. As distinguished from other forms of communication means to call a matter to the public attention.
BLACK'S LAW DICTIONARY 54 (6th ed.1990).
Webster's definition, while similar, also includes the following: "to call public attention to esp. by emphasizing desirable qualities so as to arouse a desire to buy or patronize[.]" WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 31 (1969).
FilmWorks argues that the trial court adopted the definition from Black's Law Dictionary and misapplied the definition when it found that the order forms were not advertising for the purpose of Rule 116 because the primary purpose of the order forms was not advertising. FilmWorks mischaracterizes the trial court's statements.
Although the trial court recognized that the parties had relied on the definition of advertise from Black's Law Dictionary, it ultimately found this definition too broad. Instead, the trial court found that although the order forms contained some material that could be considered advertising, the advertising value of the order forms as a whole was incidental to their primary purpose of facilitating customer orders and most people would not recognize the forms as advertising materials.
Because the courts construe tax exemptions narrowly, it was reasonable for the trial court to conclude that the Black's Law Dictionary definition was too broad in this context. Under that definition, one could classify virtually any material containing any reference to a vendor or a vendor's products as advertising materials, regardless of how vague or incidental the reference.
Additionally, Rule 116 itself demonstrates that the exemption is specific and restrictive. It requires that advertising materials relate primarily to the articles with which they are enclosed. While FilmWorks is correct that the phrase "relate primarily to" indicates that the materials must relate to the articles with which they are enclosed and does not state that the primary purpose of the materials must be advertising, it is another indication that DOR intended this exemption to apply only in very specific circumstances.
Further support for a narrow definition of "advertising materials" is that Rule 116 does not exempt advertising materials that promote sales of other products. This language requires the court to investigate the taxpayer's purpose in sending the materials.
Because we construe tax exemptions narrowly and because the regulation has a restrictive nature, it is appropriate to narrowly interpret the word "advertising." Thus, written materials must contain more than some incidental advertising value before they will fit the definition of "advertising material." The broader definition that FilmWorks urges us to use would allow the exception to swallow the rule by exempting any form or document that even incidentally mentions products that are primarily related to the articles sold. This would be inconsistent with the intent of the regulation.
*465 We disagree with FilmWorks' contention that this amounts to an impermissible "primary purpose" test.[4] Nonetheless, the taxpayer's purpose for purchasing the order forms is an important consideration because to be exempt from retail sales tax the product must be purchased for resale. RCW 82.04.050(1)(a). The trial court merely determined that FilmWorks purchased the forms to facilitate processing customer orders, not for resale.
Additionally, although the trial court examined the amount of display and description contained in the order forms and considered the primary function of the forms, it did not rely on those factors as conclusive. Rather, the trial court used those factors as an aid in determining an appropriate definition of "advertising material" that would be consistent with the language of the exemption and with the tax statutes as a whole. The trial court found that, in this context, a form with merely incidental advertising value did not qualify as "advertising material."
Given that the order forms provided only the most basic information about FilmWorks' products, a basic description and price, the trial court did not err in concluding as a matter of law that they are not advertising materials. The text does not call attention to the products "by emphasizing desirable qualities so as to arouse a desire to buy or patronize." WEBSTER'S, supra. The statutory scheme and the requirement that we read the exemption narrowly mandate application of the use tax on these order forms because they were purchased for consumption, not for resale.

IV. USE
DOR argues alternatively that FilmWorks is liable for use tax because it put the forms to an intervening use as a consumer by printing customer information on them before sending them to customers.
A sale is for resale and, thus, not subject to retail sales tax only if the taxpayer purchases the personal property for resale and the taxpayer does not put the property to an intervening use. RCW 82.04.050(1)(a). Thus, even if the order forms qualify under Rule 116 as advertising material purchased for resale, FilmWorks would be subject to use tax on the forms if it had made an intervening use of the forms.
RCW 82.12.010(2) defines "use":
"Use," "used," "using," or "put to use" shall have their ordinary meaning, and shall mean the first act within this state by which the taxpayer takes or assumes dominion or control over the article of tangible personal property (as a consumer), and include installation, storage, withdrawal from storage, or any other act preparatory to subsequent actual use or consumption within this state[.][5]
(emphasis added).
The trial court determined that FilmWorks had engaged in an intervening use by storing the order forms, withdrawing them from *466 storage, and printing customer information on them. FilmWorks challenges this ruling, arguing that DOR had to show subsequent actual use or consumption. It contends that merely printing customer information on the forms in preparation for actual use or consumption was not sufficient. DOR disagrees, contending that this exercise of dominion and control over the forms constitutes an intervening use.
FilmWorks cites no authority to support its argument that a taxpayer must make actual use of the goods before its actions qualify as an intervening use. To the contrary, the Washington Board of Tax Appeals opinions show that exercising dominion and control alone without actual use has often been sufficient to establish "use." See, e.g., Cool v. Dep't of Revenue, No. 54893, 2000 WL 1093278 (Wash. Bd. of Tax Appeals, June 16, 2000) (second meaning of "use" did not contemplate actual use or even anticipated actual use within this state as long as the purchaser exercised dominion and control over the items within this state); Christensen v. Dep't of Revenue, No. 49466, 1997 WL 235979 (Wash. Bd. of Tax Appeals, April 21, 1997) (actual use is not required before a taxpayer is liable for use tax but rather tax liability attaches as of the first act by which a taxpayer takes or assumes dominion and control).
Although Board opinions are not binding on this court, they can be persuasive. Both Cool and Christensen reflect that the critical part of RCW 82.12.010(2) is the language referring to the first act of dominion and control. The statute does not specifically require any later actual use (in the ordinary meaning of "use"); it merely requires an act of dominion and control, which may include any act preparatory to subsequent actual use or consumption.
Printing customer information on the forms was an act that benefited FilmWorks by making the forms useful to it if the customers returned the forms with their subsequent orders; thus, it was an act preparatory to subsequent actual use. Further, printing the customer information on the forms was an intervening act because it was the first act of dominion and control over the forms before FilmWorks sent the forms to its customers. Actual consumption was not necessary; a preparatory act alone was sufficient to establish an intervening use.
In another Board case with strikingly similar facts, the act of printing distributor and customer information on envelopes was sufficient to qualify as an intervening act. In CX Corp. v. Dep't of Revenue, No. 14117, Bd. of Tax Appeals (Wash. Jan. 1976), the taxpayer, a film processor, purchased envelopes and labeled them with dealer information. The taxpayer then distributed the envelopes to various dealers who entered the customer's processing information on the envelope and used the envelopes to return the customer's undeveloped film to the taxpayer. The taxpayer then used the information on the envelope to facilitate processing and to ensure that it returned the processed orders to the correct dealer.
The taxpayer asserted that the envelopes were "containers" and, thus, were exempt from taxation under WAC 458-20-115. WAC 458-20-115 is similar to Rule 116 in that it classifies the purchase of certain types of containers as sales for resale.
The Board found that the taxpayer was subject to tax regardless of the exemption in WAC 458-20-115 because the envelopes "facilitate[d] and expedite[d] the film processing done by [the taxpayer]." CX, No. 14117 at 5. The Board further found that the taxpayer's act of printing the dealer information on the envelopes also aided in identification and sorting during the processing of the film and benefited the taxpayer.[6]
The facts here are very similar. Although Rule 116 and the regulation in CX differ, they have the same effect of classifying the sale of certain items for certain uses as sales for resale. The only real differences are that this case involves order forms rather than containers and that FilmWorks sends the order forms directly to its customers rather *467 than to dealers. We see no significance in these differences.
As in CX, FilmWorks altered the order forms for its own use: to facilitate its communication with customers and to facilitate order tracking. In doing so, it "used" the forms as defined by statute. As there was an intervening use, FilmWorks is liable for the use tax even if the order forms are "advertising materials."
Finding no error, we affirm.
We concur: MORGAN, P.J., and HOUGHTON, J.
NOTES
[1] The order forms in the packets used to return processed film differ from the order forms FilmWorks includes in packets it sends to potential customers. The latter are not involved in this appeal.
[2] Although DOR amended Rule 116 in 1993, partially through the audit period, both parties rely on the post 1993 version of the rule and both contend that the pre 1993 rule contains no significant difference. See WAC 458-20-116 (amended effective October 3, 1993). Thus, our analysis deals only with the post 1993 version of Rule 116.
[3] The definitions contained in chapters 82.04 RCW (B & O tax) and 82.08 RCW (retail sales tax) apply in the use tax context. See RCW 82.12.010(5).
[4] The cases that FilmWorks cites to support its assertion that the "primary purpose" test is inappropriate are not on point. In Lone Star Indus., Inc. v. Dep't of Revenue, 97 Wash.2d 630, 647 P.2d 1013 (1982), the court held that a regulation imposing a primary purpose test on ingredients consumed in the production of a product conflicted with RCW 82.04.050(1)(c) by imposing the test on ingredients when the statute treated ingredients and chemicals differently and only applied the primary purpose test to chemicals. Lone Star, 97 Wash.2d at 634-35, 647 P.2d 1013. In Weyerhaeuser Co. v. Dep't of Revenue, 16 Wash.App. 112, 553 P.2d 1349 (1976), the court determined that the primary purpose test was not applicable because the chemical used in processing paper only had one use, that of an ingredient. Neither case prohibits this court from examining the purpose of the order forms to help determine whether they are or are not "advertising materials." Unlike Weyerhaeuser, it is clear here that the forms have more than one use and, unlike in Lone Star, examining the purpose of the forms does not conflict with any specific statute.
[5] We note that neither party addresses how the definition of "consumer" in RCW 82.12.010(5) affects the application of Rule 116 in the context of use tax. RCW 82.12.010(5) defines consumer to include "any person who distributes or displays, or causes to be distributed or displayed any article of tangible personal property, except newspapers, the primary purpose of which is to promote the sale of products or services." Although this could suggest that FilmWorks purchased the forms as a consumer and not for resale, because both parties assert that Rule 116 applies equally to use and sales tax, we merely note this as a potential issue and do not analyze it further.
[6] Although FilmWorks argues that CX can be distinguished from this case because the Board assumed all envelopes were returned, in its opinion the Board does not discuss the actual return rate of the envelopes.