[No. 38247-4-II.   Division Two.   September 22, 2009.]

WASHINGTON IMAGING SERVICES, LLC, *Appellant*, v. THE DEPARTMENT OF REVENUE, *Respondent*.

282

*Greg Montgomery* and *Monica Langfeldt* (of *Miller Nash LLP*), for appellant.

*Robert M. McKenna, Attorney General*, and *Peter B. Gonick* and *Heidi A. Irvin, Assistants*, for respondent.

¶1 QUINN-BRINTNALL, J. — Washington Imaging Services LLC (WIS) appeals the trial court's grant of summary judgment in favor of the state Department of Revenue (DOR). The trial court found the funds that WIS collects from its patients or its patients' insurance companies and forwards to Overlake Imaging Associates PC are gross income to WIS and subject to Washington's business and

occupation (B&O) tax. We hold that these funds are payments WIS collects much like a collection agency for services that Overlake renders and, as such, are not gross income to WIS' business and are not subject to Washington's B&O tax. Accordingly, we reverse and remand.

## FACTS

### WIS

¶2 WIS is a Washington limited liability company that operates medical imaging facilities in Bellevue and Issaquah, Washington. At these facilities, WIS provides all of the equipment and supplies necessary to produce medical images, including magnetic resonance imaging scans, computed tomography scans, positron emission tomography scans, x-rays, and other forms or modalities of medical images. WIS employs administrative support staff as well as trained technicians who operate and maintain the medical imaging equipment.

¶3 WIS provides medical imaging services for patients referred by their treating physicians. WIS ultimately provides these treating physicians with a written report that contains medical image information to assist in the diagnosis and treatment of their patients. WIS generates the medical image and, because it does not have a medical license, contracts for the professional medical interpretation of the image by a radiologist. WIS contracts with Overlake, a group of radiologists, for the professional medical interpretation of WIS' images.

¶4 WIS and Overlake have two contracts. The first contract, signed in 1996, governs the terms and conditions under which Overlake provides the professional medical services of its radiologists to provide medical interpretations of WIS' images. Under the second contract, WIS submits a single global bill directly to the patients' insurance companies for both its fee, which it refers to as "technical charges," and Overlake's interpretation fee, which it refers to as "professional charges"; such a single

global bill is customary in the outpatient medical imaging business.[1]

¶5 Overlake and WIS entered into a second contract only after Overlake's previous third party billing company ceased service in 2001. Under the second contract, WIS collects both its fee and Overlake's fee and passes on to Overlake the professional fee less an agreed upon service charge calculated as a percentage of the professional fee amount WIS collected. Of importance here, this second contract provides that WIS has no ownership interest in that portion of payment allocated for Overlake's professional fees; rather, WIS acts as the collection agent for Overlake's fees. In this second contract, Overlake also agreed that WIS could bill for its fees and Overlake's fees in one "global bill" as insurance companies require. The patients' insurance company then issues its payments for both the professional and technical services in a single global payment, without designating what portion of the payment is for each type of service. If the global bill that WIS issues to the patients' insurance company, or the patients, is not paid, WIS does not have any obligation to pay Overlake for Overlake's professional services.

¶6 If the insurance does not cover the entire amount of the bill, WIS sends the patients a secondary bill for the amount of the patients' responsibility. The secondary bill to the patients identifies the radiologist who interpreted the image, the initial charge for all services, any adjustment of that charge made by the insurance company, the amount paid by the insurance company, and the remaining amount the patients owe under their policy.

---

[1] Insurance companies also prefer global billing because it is far more efficient and, therefore, less expensive for the health insurance companies to deal with a single bill that contains all charges for a health care service than to deal with two partial bills for a patient's health care services. In fact, the record shows that the insurance companies will not pay a patient's isolated bill for either the technical fee or the professional fee. Before an insurance company will pay either fee, it must have been billed for both the technical and professional fees and it must have been able to match both bills to a single procedure.

B&O TAX

¶7 Washington taxes the right to do business in this state by imposing a B&O tax on the "gross income" of a business. RCW 82.04.220. The legislature intended to impose the B&O tax on virtually all business activities in the state. *Simpson Inv. Co. v. Dep't of Revenue*, 141 Wn.2d 139, 149, 3 P.3d 741 (2000) (quoting *Time Oil Co. v. State*, 79 Wn.2d 143, 146, 483 P.2d 628 (1971)). Taxation is generally the rule, and deductions or exemptions are the exception. *Columbia Irrigation Dist. v. Benton County*, 149 Wash. 234, 240, 270 P. 813 (1928). Tax exemptions and deductions must be narrowly construed. *Crown Zellerbach Corp. v. State*, 45 Wn.2d 749, 757-58, 278 P.2d 305 (1954). Washington's B&O tax does apply to health care services. *See* RCW 82.04.322, .4297, .431 (allowing for B&O tax exemptions and deductions for various aspects of health services).

¶8 DOR has created an exemption when a business receives and handles money for reasons other than as compensation for goods or services it sold. WAC 458-20-111 (Rule 111). Under Rule 111, a business can exclude from its taxable gross income amounts it receives solely as an agent for a client, which the business (as agent) must pay on the client's behalf to third parties. WAC 458-20-111. DOR cites a car dealership's collection of sales tax as a classic example of this type of payment. WAC 458-20-111. Because the sales tax is collected from the purchaser and passed immediately to the state, these payments are frequently described as "pass-through" payments.

¶9 Although the "pass-through" concept appears to be relatively simple, DOR and taxpayers often disagree about the circumstances under which it applies. Rule 111 sets the bar for tax exclusions relatively high, requiring taxpayers to meet several conditions. *Christensen, O'Connor, Garrison & Havelka v. Dep't of Revenue*, 97 Wn.2d 764, 768, 649 P.2d 839 (1982). If any one of the conditions is missing, then the taxpayer's receipts are deemed taxable gross income of the business under RCW 82.04.080 and the B&O tax is due. *See*

*Christensen*, 97 Wn.2d at 768. Likewise, if a taxpayer's receipts are in fact gross income of the business, the taxpayer cannot prove Rule 111 requirements to exclude them from being taxed.

DOR AUDIT OF WIS

¶10 In late 2005, DOR audited WIS for the period January 2000 through June 2005. DOR concluded that WIS underpaid its B&O tax for the audit period because it had not included in its gross income the money it collected and subsequently forwarded to Overlake as compensation for the professional medical interpretation services Overlake provided. WIS unsuccessfully contested the audit and, on August 21, 2007, WIS paid $250,597.79 under protest, with interest and penalties, and promptly sued DOR for a refund. WIS and DOR agreed that no genuine issues of material fact existed, and both parties moved for summary judgment. On August 15, 2008, the trial court denied WIS' motion for summary judgment and granted summary judgment in favor of DOR.

¶11 The question we address in this appeal is whether the money that WIS, a medical imaging services business, receives from patients or the patients' insurance companies and pays to Overlake, a professional services corporation, is taxable as gross income to WIS, as well as to Overlake.[2]

ANALYSIS

STANDARD OF REVIEW

■■ ¶12 We review an order on summary judgment de novo. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 860, 93 P.3d 108 (2004). Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogato-

---

[2] During oral argument, DOR asserted that because B&O tax is a pyramiding-type tax, not a value-added-type tax, both WIS and Overlake are required to pay B&O tax on these funds. Wash. State Court of Appeals oral argument, *Wash. Imaging Servs., LLC v. Dep't of Revenue*, No. 38247-4-II (May 8, 2009), at 23 min. 45 sec.

ries, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). We view all facts in the light most favorable to the nonmoving party. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005). Summary judgment is appropriate only if reasonable persons could reach but one conclusion from all the evidence. *Vallandigham*, 154 Wn.2d at 26.

¶13 Agency rules are subject to the same principles of interpretation as statutes. *See Seattle FilmWorks, Inc. v. Dep't of Revenue*, 106 Wn. App. 448, 453, 24 P.3d 460, *review denied*, 145 Wn.2d 1009 (2001). Generally, taxation is the rule and exemptions and deductions are the exception. *Columbia Irrigation Dist.*, 149 Wash. at 240. Because of the broad application of Washington's taxing statutes, we narrowly construe tax deductions and exemption statutes. *Crown Zellerbach Corp.*, 45 Wn.2d at 757-58; *accord United Parcel Serv., Inc. v. Dep't of Revenue*, 102 Wn.2d 355, 360, 687 P.2d 186 (1984); *accord Budget Rent-A-Car of Wash.-Or., Inc. v. Dep't of Revenue*, 81 Wn.2d 171, 174-75, 500 P.2d 764 (1972). We construe any ambiguity in such a statute strictly, but fairly, against the taxpayer. *Grp. Health Coop. of Puget Sound, Inc. v. Wash. State Tax Comm'n*, 72 Wn.2d 422, 429, 433 P.2d 201 (1967); *Crown Zellerbach Corp.*, 45 Wn.2d at 757-58. The taxpayer bears the burden of proving that it qualifies for a tax deduction. *Grp. Health*, 72 Wn.2d at 429.

Gross Income

¶14 Washington levies a B&O tax on a business's gross income, including compensation for "rendition of services." RCW 82.04.080. RCW 84.04.080 defines "gross income" of the business as

the value proceeding or accruing by reason of the *transaction of the business engaged in* and includes gross proceeds of sales, *compensation for the rendition of services*, gains realized from trading in stocks, bonds, or other evidences of indebtedness,

interest, discount, rents, royalties, fees, commissions, dividends, and other emoluments however designated, all without any deduction on account of the cost of tangible property sold, the cost of materials used, labor costs, interest, discount, delivery costs, taxes, or any other expense whatsoever paid or accrued and without any deduction on account of losses.

(Emphasis added.)

¶15 Under this broad definition, a service provider may not deduct any of its own costs of doing business from its gross income. *Rho Co. v. Dep't of Revenue*, 113 Wn.2d 561, 566-67, 782 P.2d 986 (1989).

¶16 Here, WIS argues that the funds it collects and passes to Overlake are not gross income under RCW 82.04.080. DOR contends that unless WIS satisfies the requirements of Rule 111, the funds at issue are the cost of doing business and are included in gross income as a matter of law. For the reasons stated below, we agree with WIS.

¶17 Our decision in *Medical Consultants Northwest, Inc. v. State*, 89 Wn. App. 39, 947 P.2d 784 (1997), *review denied*, 136 Wn.2d 1002 (1998), informs our decision here. Citing *Medical Consultants*, WIS argues that the funds it receives from patients and subsequently pays to Overlake do not constitute gross income because the funds are not *"compensation for services rendered by WIS."* Br. of Appellant at 17. DOR responds first that the facts in *Medical Consultants* are materially different from the facts here and, second, that these funds do constitute compensation for services WIS rendered because "WIS offers the public complete medical imaging services, bills for complete medical imaging services, and is paid for complete medical imaging services." Br. of Resp't at 13 (emphasis omitted). As a result, DOR argues that the funds are simply a cost of doing business for WIS. Again, we agree with WIS.

¶18 In *Medical Consultants*, the taxpayer, Medical Consultants Northwest (MCN), was in the business of providing objective medical opinions in the form of written reports; these written opinions were based on medical exams

performed by independent physicians. 89 Wn. App. at 41. Because MCN did not have a license to practice medicine, it contracted with individual physicians to conduct independent medical examinations (IMEs) on behalf of MCN's clients. *Med. Consultants*, 89 Wn. App. at 42. MCN then completed a written report based on the physician's notes; after completing the report, MCN billed its clients for services it provided as well as the IMEs conducted by the independent physicians; the client paid the total fee for services in one check. *Med. Consultants*, 89 Wn. App. at 42. Upon receipt of the payment, MCN forwarded the allocable portion to the physician for services rendered. *Med. Consultants*, 89 Wn. App. at 42. Under these facts, we held that "[t]he monies MCN collects for medical exams are not for MCN's 'rendition of services,' but rather are passed through to the actual renderers of the medical examination services, i.e., the physicians." *Med. Consultants*, 89 Wn. App. at 48.

¶19 Here, the undisputed facts are virtually identical to those in *Medical Consultants*. Much like MCN, WIS is in the business of providing objective medical opinions in the form of a written report based on the Overlake radiologists' professional medical interpretation of the image WIS produces. Also, because WIS does not have a license to practice medicine, it contracts with Overlake to obtain the professional medical interpretation of the patients' imaging exam, over which the Overlake radiologists have complete control. WIS administrative staff convert the radiologist's interpretation of the image into a written report and submit that report to the radiologist for signature. Importantly, like in MCN, WIS submits to its patients' insurance companies a single global bill for the technical services it rendered as well as for the professional services Overlake rendered. The insurance company pays WIS in one check, and WIS then forwards the allocable portion of the payment to Overlake for the professional medical services that Overlake's radiologist rendered. As in *Medical Consultants*, the money WIS collects for the professional medical interpretation of its medical images does not constitute payment

for WIS' "rendition of services" but is "passed through" to the actual renderers of the professional medical interpretation services, i.e., the Overlake radiologists. 89 Wn. App. at 48. Despite DOR's argument to the contrary, we see no meaningful distinction between the stipulated facts in *Medical Consultants* and the undisputed facts here.

¶20 DOR contends that the facts in *Medical Consultants* are "materially different" because MCN operated as a consulting business and worked to facilitate the examining physician's service as a medical consultant for the client. Br. of Resp't at 24. DOR also points out that if the client wished to have the consulting physician testify on his or her behalf, the client would need to arrange for this directly with the consulting physician. As a result, DOR argues that the "key relationship from a business perspective" in *Medical Consultants* was between the client and the consulting physician. Br. of Resp't at 22. But even assuming that DOR is correct about this "key business relationship," which we do not, such a distinction is not a difference that renders our opinion in *Medical Consultants* inapposite.

¶21 DOR also argues that the trial court's finding in *Medical Consultants*—that only MCN clients were liable for payment to the physicians—is a material distinction. But in *Medical Consultants*, DOR stipulated that MCN was not obligated to pay the physicians for their services if MCN was unable to collect the fee from its clients. 89 Wn. App. at 41-43. As a result, we held that (1) only the MCN client had liability for paying the physician; (2) if the client did not pay, MCN did not have primary or secondary liability for the payment; and (3) if the client did pay, MCN's liability was only to forward that payment to the physician. *Med. Consultants*, 89 Wn. App. at 44-45. Here, DOR "does not dispute that WIS paid Overlake a percentage of net amounts *actually* collected from patients" or that WIS was "not obligated . . . to pay Overlake for its professional fees *unless* WIS received payment from patients." Br. of Resp't at 40 (emphasis added) (citing Clerk's Papers (CP) at 50). We see no material distinction between MCN's and WIS' billing procedures.

COMPLETE PACKAGE/COST OF DOING BUSINESS

¶22 Next, DOR contends that WIS provides an inseparable, complete package of services that includes Overlake's professional medical services and, as a result, the payments WIS makes to Overlake are simply part of WIS' "cost of doing business," which is included in the gross income of a business. Br. of Resp't at 15. Specifically, DOR contends that because WIS enters into an arrangement with patients in which WIS patients are provided "complete medical imaging services, WIS [is] compensated for the services it render[s], with the assistance of its independent contractor[,] Overlake," and WIS bills its patients "for the complete service and [is] paid for the complete service," the "total amount of funds it collect[s] constitute[s] 'gross income of the business.'" Br. of Resp't at 21.

¶23 We agree that business costs are not exempt from a B&O tax, but DOR made a virtually identical "complete package/cost of doing business" argument in *Walthew, Warner, Keefe, Arron, Costello & Thompson v. State*, 103 Wn.2d 183, 187, 691 P.2d 559 (1984), which our Supreme Court soundly rejected. In *Walthew*, our Supreme Court ultimately held that a law firm was not required to pay the state B&O tax on client reimbursements for payments the law firm made to court reporters, physicians, and process servers because (1) these advances remained the obligation of the client and (2) the law firm, at most, assumed liability only as the client's agent. 103 Wn.2d at 190. DOR argued that Rule 111 excluded only incidental costs that were not necessary to the taxpayer's business; therefore, according to DOR's interpretation of its Rule 111, funds paid to a taxpayer that are passed through to a third party provider of services essential to the taxpayer's business represented the taxpayer's cost of doing business that may not be excluded from the taxpayer's gross income. *Walthew*, 103 Wn.2d at 187. But the *Walthew* court rejected DOR's argument. Based on the language of RCW 82.04.080 and .090, the court reasoned that the funds at issue in *Walthew*,

funds paid by the clients to the law firm, were not compensation for the rendition of services by the law firm but rather were passed through to pay for services essential to the processing of the litigation but rendered by third party providers. 103 Wn.2d at 187-89.

¶24 Here, like *Walthew*, DOR contends that all amounts paid to and through WIS constitute compensation for WIS' business of "complete medical imaging services . . . and is paid for complete medical imaging services" (Br. of Resp't at 19) regardless of whether WIS itself renders all services essential to this business or these essential services are rendered "through independent contractors or otherwise." CP at 72. Thus, just as DOR argued in *Walthew*, DOR argues here that the funds that WIS owes and pays to Overlake are a cost of doing business as a medical imaging service. DOR argues that the final product that WIS produces is a medical report that includes the Overlake radiologists' professional interpretation of the medical image WIS produced, but this is precisely the same final product provided by MCN in *Medical Consultants*.

¶25 We hold that the reasons our Supreme Court rejected DOR's "complete package" argument in *Walthew* apply here. In *Walthew*, the funds that flowed to the law firm to pay the costs of third parties who provided services necessary for the operation of the law firm's business were not part of the law firm's gross income because the law firm (1) could not provide these services as a cost of doing business and (2) was not liable either primarily or secondarily for these third party services. 103 Wn.2d at 188-89.

¶26 Here, it is undisputed that WIS does not have a medical license and is prohibited from rendering the professional medical services that Overlake provides. Moreover, WIS has no primary or secondary liability for Overlake's professional fees; it only collects payments from the patients, or the patients' insurance company, and passes them through to Overlake. If the patients or insurance company do not pay, WIS has no obligation to pay Overlake. Thus, under *Walthew* and *Medical Consultants*, the funds WIS

ultimately pays to Overlake for Overlake's professional medical services are not a cost to WIS for the services that WIS renders; instead, these funds are used to pay for professional medical services rendered by a third party, which WIS merely collects and passes through to that third party.

## Rule 111

¶27 We agree with DOR's initial contention that "unless an exemption . . . applies, a taxpayer owes B&O tax on all income received for the rendition of services." Br. of Resp't at 9. But DOR goes on to argue that "[b]ecause there is no statutory exemption for 'pass-through' payments, and because [DOR] has no statutory authority to create tax exemptions on its own, Rule 111 should be interpreted so that it 'excludes' from tax *only* those amounts that do not meet the statutory definition of 'gross income of the business.'" Br. of Resp't at 11. DOR's argument is circular and unpersuasive. Furthermore, we reject DOR's interpretation of Rule 111, as it renders the exemption meaningless.[3] Despite DOR's argument to the contrary, gross receipts do not equal gross income; in order for funds to constitute gross income, they must be payments for services rendered. RCW 82.04.080. Here, the funds that WIS takes in and forwards to Overlake are not compensation for services WIS rendered; instead, they are funds WIS passes through to Overlake as would a collection agent.[4] And if the funds are

---

[3] Moreover, DOR insists that Rule 111 is applicable only when the taxpayer is the agent of the payor (i.e., WIS' patients or the patients' insurance companies); but situations in which the taxpayer is the agent of the payee (i.e., Overlake) may also constitute pass-through payments. In such a situation, WIS functions as a collection agency. DOR conceded at oral argument that funds received by a collection agency and distributed to the creditor are not subject to B&O tax. Wash. State Court of Appeals oral argument, *Wash. Imaging*, No. 38247-4-II, at 22 min. 34 sec.

[4] Because we have determined that the funds that WIS forwards to Overlake do not constitute gross income, we need not address whether these payments constitute pass-through payments under Rule 111. But if we were to reach this issue, *Medical Consultants* would be persuasive and we would reach the same result. In *Medical Consultants*, we addressed Rule 111 and held:

not gross income,[5] then B&O taxes are not due and the exemptions need not be applied.

## CONCLUSION

¶28 We hold that the money WIS collects and forwards to Overlake for the professional interpretation of WIS' images is not compensation to WIS for "rendition of services" but, rather, this money is collected by WIS and passed through to those who actually rendered these professional medical interpretation services—Overlake radiologists. Thus, the funds WIS collects for Overlake is not gross income to WIS and WIS need not pay a B&O tax on the portion of the funds that it passes through to Overlake. Accordingly, the trial court erred when it concluded that the payments WIS receives for Overlake's professional services are subject to

---

Here, the first prong of the *Christensen* test is not in dispute. The second prong of the test is supported by the undisputed fact that MCN does not have a medical license and therefore *cannot* perform the medical examinations. The monies MCN collects for medical exams are not for MCN's "rendition of services," but rather are passed through to the actual renderers of the medical examination services, i.e., the physicians. Finally, the third prong of the *Christensen* test is satisfied because MCN is not obligated to pay an independent physician unless MCN is first paid by its client. If MCN is paid by its client, MCN's obligation to the physician is solely as an agent of its client. Accordingly, the trial court properly concluded that payments MCN receives for the purposes of paying independent physician bills are not subject to Washington's business and occupation tax.

*Med. Consultants*, 89 Wn. App. at 48.

Nor is DOR's reliance on *Pilcher v. State*, 112 Wn. App. 428, 49 P.3d 947 (2002), *review denied*, 149 Wn.2d 1004 (2003), persuasive. In *Pilcher*, a hospital contracted with a single physician, Dr. Pilcher, to serve as the medical director and to provide physician services for the hospital's emergency room.

The [h]ospital's only legal obligation was to Dr. Pilcher. The [h]ospital had no separate contract with the physicians Dr. Pilcher retained. Dr. Pilcher had no authority to enter into contracts on the [h]ospital's behalf. Dr. Pilcher was solely liable for paying the physicians. In effect, the [h]ospital was purchasing physician services and management from Dr. Pilcher.

*Pilcher*, 112 Wn. App. at 439.

Unlike Dr. Pilcher, WIS has no obligation to pay Overlake physicians for their professional services. It merely submits Overlake bills with its own. WIS merely sends patients one bill containing WIS' and Overlake's costs.

[5] Again, under Rule 111, a business can exclude from its taxable gross income amounts it receives solely as an agent for a client, which the business (as agent) must pay on the client's behalf to third parties. WAC 458-20-111.

Washington's B&O tax and granted summary judgment to DOR. We reverse and remand for entry of summary judgment in favor of WIS.

HOUGHTON and HUNT, JJ., concur.

Review granted at 168 Wn.2d 1031 (2010).