[No. 37329-7-II.   Division Two.   June 16, 2009.]

ACTIVATE, INC., *Appellant*, v. THE DEPARTMENT OF REVENUE, *Respondent.*

808

*George C. Mastrodonato* (of *Dorsey & Whitney, LLP*), for appellant.

*Robert M. McKenna, Attorney General*, and *Heidi A. Irvin, Assistant*, for respondent.

¶1  Penoyar, J. — Activate, Inc., filed a refund claim under RCW 82.32.180[1] after paying an assessment of $131,794.29 to the Department of Revenue (DOR) for unpaid use tax on a portion of its cellular telephone inventory. Both DOR and Activate moved for summary judgment, and the trial court ruled in DOR's favor. Activate now appeals, arguing that

---

[1] RCW 82.32.180 governs the procedure by which a taxpayer who has paid any tax and feels "aggrieved by the amount of the tax" can appeal to superior court.

the trial court erred by (1) granting DOR's motion and denying its own motion for summary judgment, (2) ruling that it did not qualify for the resale exemption under RCW 82.04.050(1)(a), and (3) failing to rule that it qualified for the competitive telephone service exemption under RCW 82.04.050(1)(e). Because Activate does not qualify for either exemption, we affirm.

## FACTS

¶2 Activate[2] sells cellular telephone equipment and wireless service plans in Washington. It conducts retail sales of cellular telephones and related accessories from shopping mall kiosks. Activate serves as a representative for wireless service provider AT&T Mobility[3] and receives a commission for every extended cellular telephone agreement its customers enter into with AT&T. Activate runs promotions that allow retail customers to purchase a cellular phone at a substantial or full discount, provided that the retail customer agrees to purchase one of AT&T's wireless calling plans.[4]

¶3 DOR's Audit Division audited Activate for the period of January 1, 2000 through December 31, 2003. The audit assessed "use tax on phones given away to encourage customers to sign up for cellular service through AT&T." Clerk's Papers (CP) at 15. During the period in question, Activate purchased cellular phones from AT&T suppliers and manufacturers in Oregon and did not pay Washington

---

[2] Activate is a corporation organized under the laws of the state of Oregon with its principal place of business in Beaverton, Oregon.

[3] During the period at issue in this case, Cingular Wireless merged with AT&T Wireless and became AT&T Mobility. We refer to the company as "AT&T" throughout this opinion.

[4] To receive a "full discount," the customer must enter into two contracts—one with Activate for providing the equipment and setting up the wireless service and one with AT&T for providing the wireless service. The second contract requires that customers agree to pay a monthly service charge. The greater the monthly service charge, "the more willing Activate [is] to discount" the cellular phone. Appellant's Br. at 6. Phones are not "activated" until the retail customer enters into these contracts. Clerk's Papers at 190.

sales tax on its purchase of these phones. DOR learned that Activate had not resold all of the cellular phones it purchased; rather, it had given a portion of its inventory, "without an additional or separate charge," to retail customers who agreed to sign an extended service agreement with AT&T. CP at 5. Customers who declined the free phone, however, received no reduction in the calling plan cost. Activate charged and collected sales tax when customers purchased enhanced or upgraded phones, but it did not charge tax on the phones it gave away free of charge.[5] Subsequent to this discovery, DOR assessed use tax on Activate's inventory of these phones.

¶4 Activate appealed the assessment to DOR's Appeals Division, which upheld the assessment. In July 2006, Activate paid the full assessment of $131,794.29 and filed a refund claim under RCW 82.32.180 in Thurston County Superior Court. In September 2007, DOR filed a motion for summary judgment. In response, Activate also moved for summary judgment. On January 4, 2008, the trial court granted DOR's motion and denied Activate's motion, ruling that Activate did not qualify for the resale exemption under RCW 82.04.050(1)(a).[6] It stated:

> I find Activate has failed two of [the subsection's] requirements. First, I find it did not purchase the phones for resale. It purchased the phones from AT&T and then gave the phones away at no cost and with no compensation directly from the consumer as a marketing promotion; thus, Activate, I find, did not resell the cell phones by signing up customers for the AT&T . . . service plan. Activate made intervening use of these phones by using [them] as part of the marketing promotion to attract consumer business.

Report of Proceedings (RP) at 31. Activate now appeals.

---

[5] Activate claims that all of its cellular phones were "drawn from the same inventory." Appellant's Br. at 10.

[6] Statutory citations are to the current versions of these statutes. As DOR indicates in its brief, some of the subsections cited are different from what they would have been during the tax period at issue in this case. Unless otherwise indicated, the text of these provisions, however, is identical to their earlier versions.

ANALYSIS

I. STANDARD OF REVIEW

■ ¶5 On review of an order for summary judgment, we perform the same inquiry as the trial court. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 860, 93 P.3d 108 (2004) (citing *Kruse v. Hemp*, 121 Wn.2d 715, 722, 853 P.2d 1373 (1993)). The standard of review is de novo. Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). We consider all facts in the light most favorable to the nonmoving party. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005) (citing *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990)). We grant summary judgment only if reasonable persons could reach but one conclusion from all the evidence. *Vallandigham*, 154 Wn.2d at 26 (citing *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982)).

■■ ¶6 We review questions of law, including statutory construction, de novo. *City of Pasco v. Pub. Employment Relations Comm'n*, 119 Wn.2d 504, 507, 833 P.2d 381 (1992). We look to the statute's plain language in order to fulfill its obligation and give effect to legislative intent. *Lacey Nursing Ctr., Inc. v. Dep't of Revenue*, 128 Wn.2d 40, 53, 905 P.2d 338 (1995). When faced with an unambiguous statute, we derive the legislature's intent from the plain language alone. *Waste Mgmt. of Seattle, Inc., v. Utils. & Transp. Comm'n*, 123 Wn.2d 621, 629, 869 P.2d 1034 (1994).

■ ¶7 When a statute is ambiguous, however, we will " 'resort to principles of statutory construction, legislative history, and relevant case law to assist in [interpretation].' " *Yousoufian v. Office of King County Executive*, 152 Wn.2d 421, 434, 98 P.3d 463 (2004) (quoting *State v. Watson*, 146

Wn.2d 947, 955, 51 P.3d 66 (2002)). A statute is ambiguous if it can be reasonably interpreted in more than one way. *Yousoufian*, 152 Wn.2d at 433-34 (quoting *Vashon Island Comm. for Self-Gov't v. Wash. State Boundary Review Bd.*, 127 Wn.2d 759, 771, 903 P.2d 953 (1995)). Moreover, "[w]hen construing a statute, [we] must ascertain and give effect to the Legislature's intent." *Shoreline Cmty. Coll. Dist. No. 7 v. Employment Sec. Dep't*, 120 Wn.2d 394, 405, 842 P.2d 938 (1992). When faced with two controlling statutes, we apply the more specific. *Waste Mgmt. of Seattle, Inc.*, 123 Wn.2d at 630.

¶8 "Generally, [we] must construe an ambiguous taxing statute or regulation in the taxpayer's favor, but when [we are] interpreting a regulation or statute granting a tax exemption or deduction, [we] must construe it 'strictly, though fairly and in keeping with the ordinary meaning of their language, against the taxpayer.' " *Seattle FilmWorks, Inc. v. Dep't of Revenue*, 106 Wn. App. 448, 453, 24 P.3d 460 (2001) (internal quotation marks omitted) (quoting *Group Health Coop. of Puget Sound, Inc. v. Dep't of Revenue*, 106 Wn.2d 391, 401-02, 722 P.2d 787 (1986)). "[A] taxpayer who claims an exemption carries the burden of proving [it] qualifies for it." *Glen Park Assocs. v. Dep't of Revenue*, 119 Wn. App. 481, 486, 82 P.3d 664 (citing *Budget Rent-A-Car of Wash.-Or., Inc. v. Dep't of Revenue*, 81 Wn.2d 171, 174-75, 500 P.2d 764 (1972)).

II. USE TAX

A. BACKGROUND

¶9 RCW 82.12.020(1) provides:

There is hereby levied and there shall be collected from every person in this state a tax or excise for the privilege of using within this state as a consumer: (a) Any article of tangible personal property purchased at retail, or acquired by lease, gift, repossession, or bailment, or extracted or produced or manufactured by the person so using the same, or otherwise furnished to a person engaged in any business taxable under RCW 82.04.280(2) or (7) . . . .

¶10 RCW 82.12.010(5) defines the terms "use," "used," "using," and "put to use":

> [These terms] shall have their ordinary meaning, and shall mean:
>
> (a) With respect to tangible personal property, the first act within this state by which the taxpayer takes or assumes dominion or control over the article of tangible personal property (as a consumer), and include installation, storage, withdrawal from storage, *or any other act preparatory to subsequent actual use or consumption within this state.*

(Emphasis added.)

¶11 Use tax is a companion tax imposed when a seller does not collect a retail sales tax. *See* RCW 82.08.020(1); RCW 82.12.020(1)(a); *Glen Park Assocs.*, 119 Wn. App. at 484 n.1. The use tax's purpose is "to tax the privilege of using all tangible property within the state on which sales tax has not been paid." *Sacred Heart Med. Ctr. v. Dep't of Revenue*, 88 Wn. App. 632, 638, 946 P.2d 409 (1997). The use tax rate is determined by the applicable retail sales tax rate. RCW 82.12.020(5). The measure of the tax is the " '[v]alue of the article used,' " which is generally its purchase price. RCW 82.12.010(2)(a), .020(5).[7]

¶12 The use tax statute incorporates by reference, "insofar as applicable," the words and phrases in chapters 82.04 and 82.08 RCW. RCW 82.12.010(9). Therefore, it incorporates many of the same exemptions that apply to the retail sales tax because those exemptions are embedded within the definition of "retail sale" under RCW 82.04-.050(1). Activate argues that because it qualifies for two exemptions under this statute, the trial court erred by granting summary judgment in DOR's favor and denying its motion.

---

[7] According to DOR, the measure of the sales tax, the article's "selling price," is often identical to the use tax rate. Therefore, if Activate had paid sales tax on the phones, the amount likely would have been the same as its use tax obligation in this case.

B. Application of Term "Consumer"

¶13 Under RCW 82.12.020(1), DOR taxes consumers for the privilege of using within this state any article of tangible personal property purchased at retail. Three statutory provisions appear to define the term "consumer," as applied in this context: RCW 82.04.190(1)(a), RCW 82.04-.190(2)(a), and RCW 82.12.010(9). As a preliminary matter, the parties seem to disagree regarding whether Activate is a "consumer."

¶14 DOR contends that Activate is a consumer under the aforementioned statutory provisions. Activate addresses the issue in passing in its opening brief. In its reply brief, however, it responds that it is not a "consumer" under any of these provisions. Activate's assertions are without merit.

¶15 First, RCW 82.04.190(2)(a) defines "consumer" as "[a]ny person engaged in any business activity taxable under RCW 82.04.290 or 82.04.2908."[8] Activate is a consumer under this subsection because it engages in a business activity taxable under RCW 82.04.290. RCW 82.04-.290(2) provides that a business is taxable for business and occupation taxes when it engages in any business activity "other than or in addition to an activity taxed explicitly" under another section of chapter 82.04 RCW. As DOR explains, because Activate receives only commission income from transactions involving the phones at issue in this case—an activity that is not taxed explicitly under chapter 82.04 RCW—it appears to be taxable under the plain language of RCW 82.04.290(2) and is thus a "consumer" under RCW 82.04.190(2)(a).

¶16 Second, RCW 82.12.010(9) provides:

The meaning ascribed to words and phrases in chapters 82.04 and 82.08 RCW, insofar as applicable, shall have full force and effect with respect to taxes imposed under the provisions of this chapter. "Consumer," in addition to the meaning ascribed to it

---

[8] Under RCW 82.04.030, the term "person" includes corporations and limited liability companies.

in chapters 82.04 and 82.08 RCW insofar as applicable, shall also mean any person who distributes or displays, or causes to be distributed or displayed, any article of tangible personal property, except newspapers, *the primary purpose of which is to promote the sale of products or services*. With respect to property distributed to persons within this state by a consumer as defined in this subsection (9), the use of the property shall be deemed to be by such consumer.

(Emphasis added.) Activate distributes articles of tangible personal property (phones), the purpose of which is to promote the sale of products or services (AT&T service contracts); it is a "consumer" under this provision as well.[9]

¶17 Finally, the first subsection, RCW 82.04.190(1)(a), defines the term "consumer" as

[a]ny person who purchases, acquires, owns, holds, or uses any article of tangible personal property irrespective of the nature of the person's business and including, among others, without limiting the scope hereof, persons who install, repair, clean, alter, improve, construct, or decorate real or personal property of or for consumers *other than for the purpose . . . of resale* as tangible personal property in the regular course of business.

(Emphasis added.) Whether RCW 82.04.190(1)(a) applies depends on the application of its "purpose of resale" language to the facts of this case. We discuss this issue in more depth below. It too, however, appears to apply in this case. In sum, Activate is a "consumer" for purposes of this state's use tax statute.

III. Resale Exemption under RCW 82.04.050(1)(a)

¶18 Activate first argues that it qualifies for the resale exemption under RCW 82.04.050(1)(a). We disagree.

¶19 Retail sales are normally taxable under RCW 82.08.020. RCW 82.04.050(1)(a) excludes from the defini-

---

[9] WAC 458-20-17803 provides a definition of the term "promotional material." DOR correctly asserts that if this rule were interpreted to limit RCW 82.12.010(9) to its listed examples of "promotional materials," it would be inconsistent with the statute, in which case the rule would have to give way to the statute.

tion of the phrases "sale at retail" and "retail sale" a sale to a person who presents a resale certificate[10] under RCW 82.04.470 and who "[p]urchases for the purpose of resale as tangible personal property in the regular course of business without intervening use by such person . . . ."

¶20 In other words, to qualify for the resale exemption, Activate must show that (1) it purchased the property for resale, (2) it resold the property in its regular course of business, and (3) it did not use the property before the resale. *See Glen Park Assocs.*, 119 Wn. App. at 493; *Seattle FilmWorks*, 106 Wn. App. at 457. Neither party disputes that the cellular phones at issue in this case constitute tangible personal property. Therefore, we must answer two questions with respect to this exemption: (1) whether Activate resold the cellular phones in its regular course of business and (2) whether it made any intervening use of them.

A. RESALE OF CELLULAR PHONES

¶21 Activate argues that it purchased the cellular phones for resale in the regular course of business. DOR disagrees but responds that if there was a resale as contemplated in RCW 82.04.050(1)(a), "Activate made 'intervening use' of the cellular telephones." Resp't's Br. at 25. In this case, the trial court ruled that Activate did not purchase the phones for resale but "gave [them] away at no cost and with no compensation . . . as a marketing promotion." RP at 31.

¶22 In relevant part, RCW 82.04.040(1) defines the term "sale" as

any transfer of the ownership of, title to, or possession of property for a valuable consideration and includes any activity classified as a "sale at retail" or "retail sale" under RCW 82.04.050. . . .

---

[10] Activate claims that DOR "does not dispute" that a resale certificate was presented at the time of purchase. Appellant's Br. at 37. DOR, on the other hand, contends that this requirement is not applicable to the facts of this case because Activate purchased the cellular phones from AT&T in Oregon. In any case, neither party argues that this is an issue on appeal.

¶23 The record establishes that Activate did not sell the phones at issue in this case for money directly from the retail consumer. DOR argues that Activate has failed to demonstrate that the legislature intended the phrase "valuable consideration" to encompass situations involving transfers of tangible personal property in three-way transactions. Resp't's Br. at 31. Activate responds that the trial court's finding that there was "no compensation directly from the consumer" ignores "the inherent value of the executed AT&T service agreement that Activate sold along with the cellular telephone, for which [it] received a commission from AT&T." Appellant's Br. at 24. Activate's argument is unpersuasive as it fails to cite to authority in support of its contention that consideration need not come directly from the retail customer or that a customer's promise to enter into a service agreement with a third party meets the *statutory* definition of "valuable consideration" under RCW 82.04.040(1). Moreover, the record does not support counsel's assertion at oral argument that AT&T's monthly service fees include an "embedded" sales tax for these phones.

¶24 Finally, even if we agreed with Activate's contention that it transferred the phones to customers for valuable consideration, DOR's argument that Activate made intervening use of these phones before resale is persuasive. Therefore, Activate does not qualify for this exemption.

## B. Intervening Use

¶25 Both parties cite to two Division Two cases, *Seattle FilmWorks*, 106 Wn. App. 448, and *Mayflower Park Hotel, Inc. v. Dep't of Revenue*, 123 Wn. App. 628, 98 P.3d 534 (2004), in support of their respective arguments regarding the application of the terms "use" and "intervening use" in this case. Activate argues that DOR has failed to cite to authority in support of its contention that advertising to induce business constitutes "use"; however, "a taxpayer who claims an exemption carries the burden of proving [it] qualifies for it." *Glen Park Assocs.*, 119 Wn. App. at 486. Activate made intervening use of these phones by using

them as part of the marketing promotion to attract consumer business.

¶26 In *Seattle FilmWorks*, DOR audited a film processing and photographic services company, Seattle FilmWorks, Inc. 106 Wn. App. at 451. FilmWorks's mail-based business relied on a "mailing loop" in which it received orders, processed the orders, and then returned the orders to customers in a packet containing the following items: the processed film, negatives, new film, advertising materials, preaddressed return mailers, and two order forms.[11] *Seattle FilmWorks*, 106 Wn. App. at 450-51. Concluding that the order forms FilmWorks purchased in bulk and on which it printed customer information before placing them in these packets were not "advertising materials," DOR assessed a use tax against the company. *Seattle FilmWorks*, 106 Wn. App. at 451. FilmWorks paid the tax due and sought a refund under RCW 82.32.180. *Seattle FilmWorks*, 106 Wn. App. at 451.

¶27 On appeal to Thurston County Superior Court, FilmWorks asserted that the forms customers did not return, approximately 70 percent of the mailed forms, were advertising materials and exempt from taxation under WAC 458-20-116(3)(d).[12] *Seattle FilmWorks*, 106 Wn. App.

---

[11] FilmWorks undoubtedly included the preaddressed return mailers and two order forms in these packets in order to simplify and facilitate the process by which customers ordered prints.

[12] WAC 458-20-116(2)(b) (Rule 116) provides that a "premium" is an item offered free of charge or at a reduced price to prospective customers as an inducement to buy. Under WAC 458-20-116(3)(d), sales of advertising material to persons for use in the following manner are sales for resale and are not subject to retail sales tax:

> Sales of advertising material to persons who enclose the advertising material with articles sold by them, when such advertising material relates primarily to the articles with which it is enclosed. Persons who enclose advertising material with articles being sold for the purpose of promoting sales of other products are consumers and may not purchase this advertising material for resale. (See RCW 82.12.010(5).)

Citing to Rule 116 and DOR Determination No. 91-177, 11 Wash. Tax Dec. 219 (1991), Activate argues that DOR has already ruled that use tax applies "only when tangible personal property is 'given away' and there is no corresponding 'sale' of a service." Appellant's Br. at 34 n.12. In Determination 91-177, a camping club gave away "gift items" free of charge to potential customers who submitted

at 451-52. DOR contended that FilmWorks used the forms to facilitate film processing and that they were not advertising materials; thus, use tax was due on the full purchase price of the order forms, not just on the 30 percent of the forms customers returned. *Seattle FilmWorks*, 106 Wn. App. at 452.

¶28 After a trial on stipulated facts, the trial court found that FilmWorks used the order forms when it purchased, received, and " 'exercise[d] dominion and control over the forms with the intention that the forms be subsequently used by . . . FilmWorks,' " which constituted an act preparatory to FilmWorks's subsequent actual use. *Seattle FilmWorks*, 106 Wn. App. at 452 (second alteration in original). The trial court found that this qualified as "use" under RCW 82.12.010(2) and subjected the forms to the use tax. Additionally, the trial court concluded that, even if FilmWorks did not "use" the forms, they were primarily order forms and not advertising and, thus, not eligible for exemption. Because the forms had a " 'dual use,' " one of which was " 'taxable theoretically' " and one of which was " 'not taxable based upon the advertising exemption,' " the trial court strictly construed the regulation to find the form taxable. *Seattle FilmWorks*, 106 Wn. App. at 452.

¶29 FilmWorks subsequently appealed to this court and we affirmed the trial court's decision. First, we held that the order forms were not "advertising materials" exempt from the use tax. *Seattle FilmWorks*, 106 Wn. App. at 457. Second, we held that FilmWorks "used" the order forms by printing customer information on them before sending

themselves to a sales presentation. CP at 176. DOR assessed a use tax on those premiums in which the potential customer did not purchase a camping membership because they were "given away for promotional purposes." CP at 176. Despite Activate's arguments to the contrary, DOR notes that its position in this case is entirely consistent with Rule 116 and its determination in that case. At oral argument, DOR noted three problems with Activate's reliance on Determination 91-177: (1) the case involved an older version of Rule 116 that has since been suspended, (2) the language to which Activate cites is included in a footnote and is thus dicta, and (3) nothing was resold in this case. Finally, in its brief, DOR also notes that Rule 116(7)(d) provides a specific example that "clearly indicates [DOR's] position on a similar transaction." *See* Resp't's Br. at 35. Therefore, it appears that Determination 91-177 is of little use to us in this case.

them to customers. *Seattle FilmWorks*, 106 Wn. App. at 460. In coming to this conclusion, we noted:

> FilmWorks cites no authority to support its argument that a taxpayer must make actual use of the goods before its actions qualify as an intervening use. To the contrary, the Washington Board of Tax Appeals opinions show that exercising dominion and control alone without actual use has often been sufficient to establish "use."

*Seattle FilmWorks*, 106 Wn. App. at 459. Noting that RCW 82.12.010(2) merely requires an act of dominion and control, "which may include any act *preparatory* to subsequent actual use or consumption," we held that printing customer information on the forms was an act that benefitted FilmWorks by making the forms useful to it if the customers returned the forms with their subsequent orders. *Seattle FilmWorks*, 106 Wn. App. at 459. Thus, it was an act preparatory to subsequent use.

¶30 Furthermore, we held that printing the customer information on the forms was an intervening act because it was the first act of dominion and control over the forms before FilmWorks sent the forms to its customers. "Actual consumption was not necessary; a preparatory act alone was sufficient to establish an intervening use." *Seattle Film-Works*, 106 Wn. App. at 459. Therefore, we concluded, because there was an intervening use, FilmWorks was liable for the use tax even if the order forms were "advertising materials." *Seattle FilmWorks*, 106 Wn. App. at 460-61.

¶31 Similarly, in *Mayflower Park Hotel*, DOR assessed a deficiency against the Mayflower Park Hotel after it failed to pay retail sales tax on transactions in which Mayflower purchased furnishings and amenities to place in its rooms. 123 Wn. App. at 630. Mayflower paid under protest and appealed to an administrative law judge, who affirmed the assessment. *Mayflower Park Hotel*, 123 Wn. App. at 630. Mayflower then appealed to Thurston County Superior Court, which also affirmed. The question on appeal was whether a transaction by which Mayflower purchased fur-

nishings and amenities from its vendor was a "retail sale." *Mayflower Park Hotel*, 123 Wn. App. at 630. In response to Mayflower's argument that it did not "use or consume" the furnishings or amenities that it placed in its guest rooms and that RCW 82.04.050(1)(a) applied, we stated:

> Like the courts elsewhere, however, we think that a hotel "uses or consumes" such items, in the course of furnishing lodging, when it puts them in its rooms for the comfort of its guests. That its guests may also use or consume such items is not material here.
>
> ... [W]e think that Mayflower makes "intervening use" of the items it purchases when it puts those items in its rooms for use by its guests.

*Mayflower Park Hotel*, 123 Wn. App. at 632-33 (footnote omitted). We therefore affirmed DOR's assessment against the hotel. *Mayflower Park Hotel*, 123 Wn. App. at 634.

¶32 Although neither case is directly on point, we have clarified that the term "use" does not necessarily require "actual use," as Activate seems to suggest. In this case, the record demonstrates that after Activate withdrew the cellular phones from its warehouse or distribution center in Oregon, it transferred them to kiosks in Washington and marketed and offered them—free of charge—to customers who agreed to enter into personal service agreements with AT&T. In fact, a letter sent by Activate's certified public accountant to DOR's Appeals Division stated:

> The subject telephone equipment, whether with an additional charge or fully discounted, is *offered solely as an inducement to secure the sale of retail cellular telephone services for a minimum period, usually one or two years.*

CP at 27 (emphasis added).

¶33 Activate's argument that *FilmWorks* is distinguishable is also unpersuasive. Although Activate did not physically alter the phones in the same way FilmWorks altered the order forms (by printing customer information on them), it used them to its benefit and in a way that was useful to them—it ultimately used them to promote,

through advertising, service agreements with AT&T. The trial court recognized this when it found that Activate made intervening use of these phones by using them as part of the marketing promotion to attract consumer business. Additionally, Activate's argument regarding the taxability of "free" and "promotional items" offered by other retailers is unconvincing, as this court does not have any information regarding taxes paid to DOR for these items. In sum, Activate has failed to offer facts that demonstrate that it qualifies for this exemption.

IV. COMPETITIVE TELEPHONE SERVICE EXEMPTION UNDER RCW 82.04.050(1)(e)

¶34 Activate next argues that, independent of the resale exemption, RCW 82.04.050(1)(e) "is equally, if not more, applicable to exempt these cellular telephones from sales and use tax." Appellant's Br. at 35 (emphasis omitted). DOR responds that Activate does not qualify for this exemption, and that DOR is not, as Activate claims, just "splitting hairs over semantics." Appellant's Br. at 38. This exemption would require that a "separate charge" be made for the phones. Because it gave the phones to its customers without charge in this case, this exemption does not apply.

¶35 RCW 82.04.050(1)(e)[13] excludes from the definition of the phrases "sale at retail" and "retail sale" a sale to a person who presents a resale certificate under RCW 82.04.470 and who

> [p]urchases for the purpose of providing the property to consumers as part of competitive telephone service, as defined in RCW 82.04.065. The term shall include every sale of tangible personal property which is used or consumed or to be used or consumed in the performance of any activity classified as a "sale at retail" or "retail sale" even though such property is

---

[13] As DOR notes, the legislature likely included this exemption to clarify that it intended property provided to customers as part of competitive telephone service to qualify as a sale of tangible personal property. For example, this exemption would have applied to phones AT&T once provided to customers for a monthly charge.

resold or utilized as provided in (a), (b), (c), (d), or (e) of this subsection following such use. The term also means every sale of tangible personal property to persons engaged in any business which is taxable under RCW 82.04.280(2) and (7), 82.04.290, and 82.04.2908.

RCW 82.04.065(1) defines the phrase "competitive telephone service" as

> the providing by any person of telecommunications equipment or apparatus, or service related to that equipment or apparatus such as repair or maintenance service, if the equipment or apparatus is of a type which can be provided by persons that are not subject to regulation as telephone companies under Title 80 RCW *and for which a separate charge is made.*

(Emphasis added.) The parties appear to agree that Activate is a nonregulated telephone company selling customer premises equipment under RCW 80.36.370(4).

¶36 DOR does not dispute that the cellular phones Activate sells or provides are the type of equipment that qualify under RCW 82.04.065(1). Rather, it argues that a separate charge must be made for these telephones in order for this exemption to apply. Activate and DOR disagree as to what constitutes a "separate charge" in this case.

¶37 Chapter 82.04 RCW does not define the phrase "separate charge." The dictionary, however, defines "charge" as an "expenditure or incurred expense," a "pecuniary liability," or "the price demanded for a thing or service." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 377 (2002). Activate's invoices reflect the following: when Activate sold cellular phones to customers, it recorded those sales using numerical notations such as "$49.99" and "$99.99." CP at 198, 202. When it "fully discounted" cellular phones for its customers, however, Activate recorded those transactions using the notation "$0.00." CP at 194. Invoices did not, in these instances, reflect monetary charges. At several points throughout this litigation, Activate has conceded as much; for example, in its complaint for refund of excise taxes, it stated:

The [phones at issue in this case are] provided to the customer without an additional or separate charge, unless the customer wants to upgrade the phone with more features, in which case a charge is made to the customer for the enhanced telephone. At issue in this case are the cellular telephones provided to customers without additional charge.

CP at 5; *see also* CP at 190 ("Exhibit 1 is a representative sample contract where the customer received a cellular telephone at no charge."). Although this language is not dispositive of the issue, it reinforces DOR's argument that under the statutory plain language, customers did not incur an "expense" or "pecuniary liability" for these phones.

¶38 Furthermore, Activate's argument that a conflict would exist between the aforementioned exemptions if we applied DOR's interpretation of the phrase "separate charge" is without merit. First, as DOR notes, if a taxpayer qualifies for one exemption, then it is exempt regardless of whether it qualifies for another tax exemption. In other words, if Activate qualifies for the competitive telephone service exemption, then it is exempt regardless of whether it qualifies for the resale exemption. Second, Activate incorrectly asserts that any "charge" greater than $0.00 would qualify as a resale under RCW 82.04.050(1)(a) and would therefore render the competitive telephone service exemption "redundant and unnecessary." Appellant's Br. at 41-42. Activate ignores the resale exemption's other requirements (i.e., tangible personal property, resold in the regular course of business, without intervening use). That both exemptions can conceivably apply to the same transactions is not a basis for rejecting DOR's interpretation of this phrase. Activate has failed to demonstrate that it qualifies for this exemption.

¶39 We affirm the trial court's ruling granting summary judgment in DOR's favor. To reverse with instructions to grant summary judgment in Activate's favor would, as DOR notes, eliminate Activate's obligation to pay both retail sales tax *and* use tax on the phones in question. Activate

has failed to demonstrate that such a result is warranted in this case.

¶40 Affirmed.

Van Deren, C.J., and Quinn-Brintnall, J., concur.